**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| STUART MEISSNER and STACEY MEISSNER, *on behalf of themselves and all others similarly situated,* ) ) ) ) | Case No. 5:20-cv-00839-MAD-ATB |
| PLAINTIFFS, ) ) | |
| v. ) ) ) ) | **FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| SYRACUSE UNIVERSITY, ) ) | |
| DEFENDANT. ) | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

<u>**FIRST AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiffs, Stuart Meissner and Stacey Meissner (collectively, "Plaintiffs"), by and through their undersigned counsel, brings this class action against Defendant, Syracuse University (the "University" or "Defendant"), and allege as follows based upon information and belief, except as to the allegations specifically pertaining to them, which are based on personal knowledge.

<u>**NATURE OF THE ACTION**</u>

1.     This is a class action lawsuit on behalf of all persons who paid tuition and/or fees for a student to attend Syracuse University for an in person, hands-on education for the Spring 2020 semester, and had their course work moved to online learning. Such persons paid all or part of the tuition and mandatory fees described herein (the "Mandatory Fees").

2.     Syracuse University has not refunded any amount of the tuition, and has only refunded a nominal and arbitrary portion of the Mandatory Fees, even though it suspended in-person classes and implemented online distance learning since March 13, 2020.

3.     On or about March 13, 2020, the University also stopped providing any of the services or facilities the Mandatory Fees were intended to cover.

4.     Plaintiffs and Syracuse entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services, access, and programs.  The terms of the contractual agreement were set forth in publications from Syracuse University, including Syracuse University's Spring Semester 2020 Course Catalog ("Course Catalog").

5.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying for selected courses.

[space intentionally left blank]

6.      The Course Catalog provided Plaintiffs and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which courses would be held.  An exemplar of the Spring Semester 2020 Course Catalog is pasted below:



[space intentionally left blank]

7.     Indeed, the Course Catalog specifically allows for students to search for courses to enroll in based on "Mode of Instruction," which includes an option for "In Person."[1]



8.     Other publications from Syracuse reference the in-person nature of the Spring Semester 2020 course offerings, including course specific syllabi and the University's Academic Rules[2], which detail the policies, procedures, and expectations of Syracuse University students. The Academic Rules describe the policies regarding in-person education and the importance of in-

---

[1] https://myslice.ps.syr.edu/psp/PTL9PROD/EMPLOYEE/SA/c/SA_LEARNER_SERVICES.CLASS_SEARCH.GBL? (last visited Aug. 13, 2020).

[2] http://coursecatalog.syr.edu/content.php?catoid=17&navoid=2249#2-0-attendance-in-classes (last visited Aug. 13, 2020).

person class attendance.  *See id.* at 2.0, Attendance in Classes ("Attendance in classes is expected in all courses at Syracuse University.  Students are expected to arrive on campus in time to attend the first meeting of all classes for which they are registered."); *id.* at 2.1, Reporting Non-Attendance/Non-Participation or Stopped Attending ("If a student never attends or stops attending a class, the instructor will report non-attendance/non-participation ….  If a student is flagged for non-attendance in a class and does not drop the class by the Financial Drop deadline, the student will receive a NA 'did not attend' grade on the official transcript.").

9.     Moreover, the Tuition, Fees and Related Policies Bulletin,[3] provides many of the policies and procedures regarding tuition and fees, and the in-person nature of such.  For example, the "Student Activity Fee" is described as a "mandatory fee … that is collected by the University … [and] then allocated by the student governing bodies to a large number of campus organizations to support their activities and services."  *Id.* at 7.

10.     Additionally, Syracuse provides its faculty with a "Faculty Manual,"[4] which provides many of the policies and procedures regarding Faculty, including their teaching obligations to students.  One such obligation, of which students are the intended beneficiaries, is to "keep[] and post[] regular office hours."  *Id.* at 3.11, Instruction.

11.     The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 13, 2020, is a breach of the contracts between the University and Plaintiff and the members of the Class and is unjust.

---

[3] https://bfas.syr.edu/wp-content/uploads/2019/06/2019-2020-Tuition-and-fees-booklet.pdf (last visited Aug. 13, 2020).

[4] https://provost.syr.edu/faculty-manual/ (last visited Aug. 13, 2020).

12.     In short, Plaintiff and the members of the Class have paid for tuition for a unique, on-campus, in person educational experience, with all the appurtenant benefits offered by a first-rate university, and were provided a materially deficient and insufficient alternative, which alternative constitutes a breach of the contracts entered into by Plaintiff and the Class with the University.

13.     As to Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities which are simply not being provided; this failure also constitutes a breach of the contracts entered into by Plaintiffs and the Class members with the University.

14.     Plaintiffs seek, for themselves and Class members, the University's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time that remained in the Spring 2020 semester when the University closed and switched to online distance learning. The return of such pro-rated amounts would compensate Plaintiffs and the Class members for damages sustained by way of Defendant's breach.

## PARTIES

15.     Plaintiff Stuart Meissner is a citizen of New Jersey.  He paid for his daughter to attend the Spring 2020 semester at the University as a full-time undergraduate student.  Plaintiff paid tuition for the Spring 2020 semester and the Mandatory Fees to enable his daughter to obtain an in-person, on-campus educational experience and enable her to participate in the activities and to utilize the services covered by the Mandatory Fees that he paid.  He nor his daughter have been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, and has only been provided a nominal refund of the Mandatory Fees he paid after the University's facilities were closed and events were cancelled.

16.     Plaintiff Stacey Meissner is a citizen of New Jersey. She paid for her daughter to attend the Spring 2020 semester at the University as a full-time undergraduate student.  Plaintiff paid tuition for the Spring 2020 semester and the Mandatory Fees to enable her daughter to obtain an in-person, on-campus educational experience and enable her to participate in the activities and to utilize the services covered by the Mandatory Fees that she paid.  She nor her daughter have been provided a pro-rated refund of the tuition for her in-person classes that were discontinued and moved online, and has only been provided a nominal refund of the Mandatory Fees she paid after the University's facilities were closed and events were cancelled.

17.     Plaintiffs' daughter was an undergraduate student in her Freshman year at Syracuse during the Spring 2020 semester, pursuing a Bachelor's Degree in Nutrition. Plaintiffs paid approximately $23,105 in tuition to Defendant for the Spring 2020 semester to be in exchange for in-person on campus education.

18.     Plaintiffs also paid a $384 Health and Wellness Fee and a $100 Falk Technology Fee. The Syracuse Tuition, Fees and Related Policies Bulletin[5] describes these fees as follows:

a.   Health and Wellness Fee: "The health and wellness fee is a mandatory fee that supports a comprehensive array of health and wellness services and programs for students provided by the Counseling Center, Health Promotion, Health Services and the Office of Student Assistance."

b.   Falk Technology Fee: "This is a general fee charged to all graduate and undergraduate students enrolled in courses offered by the David B. Falk College of Sport and Human Dynamics."

19.     Prior to beginning the Spring 2020 semester, and prior to paying tuition and fees, Plaintiffs and their daughter consulted the Course Catalog and enrolled in courses for the Spring 2020 semester.  In consulting the Course Catalog, Plaintiffs and their daughter understood and

---

[5] https://bfas.syr.edu/wp-content/uploads/2019/06/2019-2020-Tuition-and-fees-booklet.pdf

believed that every course in which she enrolled was to be taught in-person. Plaintiffs' and their daughter's understanding and belief was based on the course specifying an on-campus location where the course would be taught, as well as that the courses were listed as "Mode of Instruction: In Person" on the Course Catalog search function.[6] Thus, the in-person nature of the courses was part of the benefit of the bargain, and Plaintiffs would not have paid as much, if any, tuition and fees for the Spring 2020 semester at Syracuse had they known that the courses would not, in fact, be taught in-person.

20.    Indeed, Plaintiffs' daughter's Spring 2020 semester schedule, as seen on the Syracuse student portal, shows that each and every class in which she enrolled was to be taught in-person by listing a specific building and room number in which the courses would be held.

21.    Defendant, Syracuse University, is a private research university in Syracuse, New York that was founded in 1870. The University offers numerous major fields for undergraduate students, as well as a number of graduate programs. Defendant's undergraduate and graduate programs includes students from many, if not all, of the states in the country. Its principal campus is located in Syracuse, New York. Defendant is a citizen of New York.

## JURISDICTION AND VENUE

22.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiffs and at least one member of the Class, as defined below, are citizens of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

---

[6]https://myslice.ps.syr.edu/psp/PTL9PROD/EMPLOYEE/SA/c/SA_LEARNER_SERVICES.CLASS_SEARCH.GBL? (last visited Aug. 13, 2020).

23.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## **FACTUAL ALLEGATIONS**.

25.     Plaintiffs and Class Members paid for a student to attend Syracuse University's Spring 2020 semester, including tuition and the Mandatory Fees.

26.     The Spring 2020 semester at the University began on or about January 13, 2020.[7] The Spring 2020 semester ended on or around April 28, 2020.  The University offers three shorter summer sessions, and a combined summer session.  The "Maymester" session began on or about May 11, 2020 and ended May 22, 2020.  "Summer Session I" began on or about May 18, 2020, and ended on or about June 26, 2020.[8]  "Summer Session II" began on or about June 29, 2020, and ended on or about August 7, 2020.[9]

27.     Tuition costs at the University for undergraduate students enrolled in the Spring 2020 were as follows:[10]

---

[7] https://bfas.syr.edu/wp-content/uploads/2019/06/2019-2020-Tuition-and-fees-booklet.pdf.
[8] https://www.syracuse.edu/academics/calendars/academic-year/.
[9] *Id.*
[10] https://bfas.syr.edu/wp-content/uploads/2019/06/2019-2020-Tuition-and-fees-booklet.pdf.

## Tuition - Main Campus

### Students Matriculated Beginning Fall '18

| | |
|---|---|
| Undergraduate per semester (12-19 credits) | $26,105 |
| Per credit (first 11) | 2,274 |
| Per credit (20 or more) | 1,568 |
| Winterlude per credit | 1,297 |
| Summer per credit | 1,297 |

### Students Matriculated Prior to Fall '18

| | |
|---|---|
| Undergraduate per semester (12-19 credits) | $24,390 |
| Per credit (first 11) | 2,123 |
| Per credit (20 or more) | 1,464 |
| Winterlude per credit | 1,297 |
| Summer per credit | 1,297 |

## Tuition - University College

### Students Matriculated Beginning Fall '18

| | |
|---|---|
| Undergraduate per semester (12-19 credits) | $26,105 |
| Per credit (first 11) | 695 |
| Per credit (20 or more) | 1,568 |
| Winterlude per credit | 695 |
| Summer per credit (first 11) | 695 |
| Summer per credit (12 or more) | 1,297 |

### Students Matriculated Prior to Fall '18

| | |
|---|---|
| Undergraduate per semester (12-19 credits) | $24,390 |
| Per credit (first 11) | 695 |
| Per credit (20 or more) | 1,464 |
| Winterlude per credit | 695 |
| Summer per credit (first 11) | 695 |
| Summer per credit (12 or more) | 1,297 |

28.     Tuition costs at the University for graduate students enrolled in the Spring 2020 semester were as follows:[11]

## Graduate Students

| | |
|---|---|
| **Main Campus, University College (UC), Online, Winterlude** | |
| Per credit | $1,620 |
| **Communications@Syracuse** | |
| Per credit | 1,964 |
| **Executive MPA@Syracuse** | |
| Per credit | 1,964 |
| **Data Science@Syracuse** | |
| Per credit | 1,782 |
| **School of Education—Extended Campus** | |
| Per credit | 1,298 |

---

[11] *Id.*

29.     Tuition costs at the University for students enrolled in the Summer 2020 semester were as follows:[12]

**Summer Sessions**

| | |
|---|---|
| Main Campus, per credit | 1,620 |
| Syracuse Abroad, per credit | 1,620 |
| University College/UC Online, per credit | 1,620 |

30.     The Mandatory Fees at the University consist of: Activity Fee; NYPIRG Fee; Student Co-Curricular Fee; Health and Wellness Fee; Student Health Insurance; OnTrack at SU. Students are also charged variable Course Fees depending upon the program of enrollment and courses taken.

31.     The Syracuse Tuition, Fees and Related Policies Bulletin[13] describes these fees as follows:

    a.  Activity Fee:  "[A] mandatory fee … that is collected by the University … .  The money is then allocated by the student governing bodies to a large number of campus organizations to support their activities and services."  *Id.* at 7.

    b.  Co-Curricular Fee:  "[A] mandatory fee for all undergraduates … that is collected by the University … .  The fee supports such programs and services as recreational and outdoor education, PULSE, crime prevention and safety initiatives, and student leadership development initiatives."  *Id.* at 7.

    c.  Student Health Fee:  "[A] mandatory fee that supports a comprehensive array of health and wellness services and programs for students provided by the Counseling Center, Health Promotion, Health Services and the Office of Student Assistance."  *Id.* at 7.

32.     Plaintiffs and the members of the Class paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the entire semester.

---

[12] *Id.*

[13] https://bfas.syr.edu/wp-content/uploads/2019/06/2019-2020-Tuition-and-fees-booklet.pdf (last visited July 30, 2020).

*33.*     Plaintiffs and the members of the Class paid the Mandatory Fees for each semester for the benefit throughout the entire semester of on-campus organizations, clubs, recreational education, crime prevention, and health and wellness services.

34.     Members of the Class have demanded the return of the pro-rated portion of tuition and Mandatory Fees and have taken to online petitions to demand the same.[14]   One petition illustrates the frustration University students feel with online learning:

> [I]t is impossible to equate the instruction provided in our classrooms and the learning that occurs within our on-campus resources and communities to the learning and support which will be provided online. The quality of education that we are paying for does not measure up to the quality of education that we are receiving.

### *In Response to COVID-19, the University Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes*

35.     In response to the COVID-19 pandemic, the University created a new section on its website to post news alerts and updates. [15]

36.     On March 10, 2020, the University announced that in-person classes were cancelled after March 13, 2020, and that classes will be offered only through remote online formats through at least March 30, 2020.[16]   The University also instituted on-campus social distancing protocols including cancelling all gatherings of 50 people or more.

37.     On March 16, 2020 the University announced its decision to cancel in-person classes and extend remote online learning for the remainder of the Spring 2020 semester.[17]   In

---

[14] https://www.change.org/p/chancellor-kent-syverud-syracuse-university-partial-tuition-refund-credit; https://www.change.org/p/chancellor-kent-syverud-syracuse-university-department-of-drama-partial-tuition-adjustment-refund-2020.

[15] Syracuse.edu/coronavirus.

[16] https://news.syr.edu/blog/2020/03/10/residential-instruction-suspended-effective-end-of-day-friday-march-13-university-to-transition-to-online-learning/.

[17] https://news.syr.edu/blog/2020/03/16/important-coronavirus-message-from-chancellor-syverud/.

addition, the University announced it was closing all on-campus fitness centers and that dining centers would only be offering take-out options.[18]  The University also urged students living on campus to move out as soon as possible.

38.     The University further restricted access to on-campus buildings and facilities, limiting access to only essential members of the University faculty and staff.  Specifically, on April 4, 2020, Syracuse University's Vice Chancellor for Strategic Initiatives and Innovation, J. Michael Haynie issued a reminder of the social distancing requirements stating, in pertinent part:

> At this time, only individuals who have been deemed essential personnel should be accessing buildings and facilities on our campus. Additionally, access to laboratories is limited to those engaging in essential research activity, including the maintenance of live animals and plants, microbes, cell lines and essential equipment and materials, along with any research related to COVID-19.[19]

39.     The University has not held any in-person classes since March 13, 2020.  All classes that have continued since March 23, 2020 have only been offered in a remote online format with no in-person instruction or interaction.

40.     On March 18, 2020, the University announced that access to student health services was being restricted, that all mental health counseling appointments were being held via telephone, and that all libraries were closed for the remainder of the semester.[20]

41.     Most of the services for which the Mandatory Fees were assessed were also terminated at or about this time, with only limited virtual events offered moving forward.

---

[18] https://news.syr.edu/blog/2020/03/16/coronavirus-update-state-order-will-require-dining-halls-and-fitness-centers-to-close-at-8-p-m-today/.

[19] https://news.syr.edu/blog/2020/04/04/coronavirus-update-4-4-20-support-guidance-resources-and-services/.

[20] https://news.syr.edu/blog/2020/03/18/coronavirus-updates-and-guidance-3-18-20/.

42.     Despite demand from its students, the University has expressly refused to refund tuition:[21]

> Though COVID-19 makes it impossible for us all to be on campus together, we are innovating and developing ways to deliver the high quality educational experience our students have come to expect from Syracuse University. We are issuing credits/refunds for room and board and meal plans, but will maintain tuition and program fees to continue to support an enriching, credit-bearing experience for our students.

### ***The University's Online Courses Are Inherent Different fromIn-Person Instruction, For Which Plaintiff and the Class Members Contracted with the University to Receive by Paying Tuition and Fees***

43.     Students attending Syracuse University did not choose to attend an online institution of higher learning, but instead chose to enroll in the University's in-person educational program.

44.     On its website, the University markets the University's on-campus experience as a benefit of enrollment: [22]



## Campus Highlights

With its mix of traditional and contemporary architecture, sprawling greens, and historic sculptures, Syracuse's campus is more than just a place to live. It's the backdrop for the stories you'll tell over and over. It's where you'll make lifelong friends and life-changing decisions.

At Syracuse University, four seasons provide an ever-changing stage for year-round festivals, expos and installations, and athletic events that unite the student body in an unstoppable wave of orange. Our campus is big enough to lose yourself in your interests, but small enough that you'll soon feel at home.

Here you'll learn a little more about some of our favorite places on campus, but planning a visit is the best way to get a feel for a place that will soon feel like home.

---

[21] https://news.syr.edu/blog/2020/03/18/coronavirus-updates-and-guidance-3-18-20/.
[22] https://www.syracuse.edu/life/campus-highlights/; https://www.syracuse.edu/life/meals-dining/.

# Recreation and Facilities

A Syracuse education doesn't just challenge your mind. You'll be encouraged to test and grow your physical and mental boundaries via the clubs, classes, and facilities that suit you best.

## Schine and Goldstein Student Centers

Meet a classmate for coffee. Discover your new favorite band. Pick up tickets to a guest lecture. As a student, you'll spend more than just a little time at the Schine and Goldstein Student Centers.

## Connective Corridor

The Connective Corridor is a civic engagement initiative led by Syracuse University, working with the City of Syracuse and Onondaga County. The Corridor creates a connection between the City and University, making it easier and more feasible for students to access many great downtown activities.

## Student-Run Media

At Syracuse University, student-run media is more than just an opportunity for budding journalists to hone their craft. No one knows the ins and outs of the university like students, so no one is better positioned to share what's happening, what's now, and what's next.

## Museums and Galleries

The Coalitions of Museum and Art Centers (CMAC) at Syracuse University showcases the University community's talents by exploring the visual and electronic arts through exhibitions, publications, public presentations, education, and scholarship.

## University Bookstore

The University's bookstore is a primary resource for textbooks, general interest books, art and office supplies, and even a custom framing shop.

45.     The University uses its website, promotional materials, circulars, admissions papers, and publications to tout the benefit of being on campus and the education students will receive in its facilities.

46.     The online learning options being offered to the University's students are simply different in practically every aspect as compared to what the educational experience afforded Plaintiffs daughter and the members of the Class once was.  During the online portion of the semester, the University principally used programs by which previously recorded lectures were posted online for students to view on their own, or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction among teachers and students and among students that is instrumental in interpersonal skill development.  Further, the online formats being used by Syracuse University do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

47.     Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

48.     Access to facilities such as libraries, laboratories, computer labs, and study rooms, are also integral to a college education, and access to the myriad activities offered by campus life fosters social development and independence, and networking for future careers, all substantial and material parts of the basis upon which Syracuse University can charge the tuition it charges, are not being provided.

49.     The University has not made any refund of any portion of the tuition Plaintiffs and the members of the Class paid for the semester for the period it moved to online distance learning.

50.     Nor has the University refunded an appropriate portion of the Mandatory Fees it collected from Plaintiffs and the members of the Class for the semester even though it ceased operating, closed or otherwise limited access to the services and facilities for which the Mandatory Fees were intended to pay.

51.     Plaintiffs and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as: All persons who paid or will pay tuition and/or the Mandatory Fees for a student to attend in-person class(es) during the Spring 2020 semester, but had their class(es) moved to online learning (the "Class").

53.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

54.     The requirements of Rule 23(a)(1) are satisfied.  The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, the University has reported that 15,043 undergraduate, 6,284 graduate students, and 2,700 professional students enrolled for the 2019-2020 school year.  The names and addresses of all such students are known to the University and can be identified through the University's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

55.     The requirements of Rule 23(a)(2) are satisfied.  There are questions of law and fact common to the members of the Class including, without limitation:

a.  Whether the University accepted money from Plaintiffs and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the Spring 2020 semester;

b.  Whether Defendant breached its contracts with Plaintiffs and the members of the Class by failing to provide students with an in-person and on-campus live education after March 13, 2020;

c.  Whether Defendant breached its contracts with Plaintiffs and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

d.  Whether Defendant is unjustly enriched by retaining a portion of the tuition and Mandatory Fees during the period of time the University has been closed, and Plaintiffs and members of the Class have been denied the benefit of an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees were paid;

e.  Whether Defendant intentionally interfered with the rights of the Plaintiffs and the Class when it moved all in-person classes to a remote online format, cancelled all on-campus events, strongly encouraged students to stay off campus, and discontinuing services for which the Mandatory Fees were intended to pay, all while retaining the tuition and a majority of the Mandatory Fees paid by Plaintiffs and the Class; and

f.  The amount of damages and other relief to be awarded to Plaintiffs and the Class members.

56.     The requirements of Rule 23(a)(3) are satisfied.  Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fees that they paid, that the University stopped providing in mid-March.

57.     The requirements of Rule 23(a)(4) are satisfied.  Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained competent counsel who are experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

58.     Class certification of Plaintiffs' claims is also appropriate pursuant to Rule 23(b)(3) because the above questions of law and fact that are common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive

supervision by a single court, and presents no unusual management difficulties under the circumstances.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (On Behalf of Plaintiffs and the Class)

59.     Plaintiffs repeat and re-allege the factual allegations above, as if fully alleged herein.

60.     Plaintiffs bring this claim individually and on behalf of the members of the Class.

61.     Plaintiffs and Defendant entered into a contractual relationship where Plaintiffs would provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of the parties' contractual relationship are set forth in publications from Syracuse University, including the Spring Semester 2020 Course Catalog.[23]

62.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying tuition and fees for those selected courses.  Defendant's Course Catalog constitutes an offer to enter a contractual agreement.

63.     The Course Catalog provided Plaintiffs and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which the courses would be held.

---

[23]https://myslice.ps.syr.edu/psp/PTL9PROD/EMPLOYEE/SA/c/SA_LEARNER_SERVICES.CLASS_SEARCH.GBL? (last visited August 13, 2020).

64.     Indeed, the Course Catalog search function allowed students to search and register for classes based on "Mode of Instruction:  In Person."

65.     Other publications from Syracuse reference the in-person nature of the Spring Semester 2020 course offerings, including course specific syllabi and the University's Academic Rules[24], which detail the policies, procedures, and expectations of Syracuse University students. The Academic Rules describe the policies regarding in-person education and the importance of in-person class attendance.

66.     Moreover, the Tuition, Fees and Related Policies Bulletin,[25] provides many of the policies and procedures regarding tuition and fees, and the in-person nature of such.

67.     Additionally, Syracuse provides its faculty with a "Faculty Manual,"[26] which provides many of the policies and procedures regarding Faculty, including their teaching obligations to students.  One such obligation, of which students are the intended beneficiaries, is to "keep[] and post[] regular office hours."  *Id.* at 3.11, Instruction.

68.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiffs and Class members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition.  Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Spring Semester.

---

[24] http://coursecatalog.syr.edu/content.php?catoid=17&navoid=2249#2-0-attendance-in-classes (last visited August 13, 2020).

[25] https://bfas.syr.edu/wp-content/uploads/2019/06/2019-2020-Tuition-and-fees-booklet.pdf (last visited August 12, 2020).

[26] https://provost.syr.edu/faculty-manual/ (last visited August 13, 2020).

69.     Defendant materially breached the parties' contractual agreement by failing to provide in-person education services for the entirety of the Spring Semester 2020.  The provisions of the contract breached by Defendant include, but are not limited to, the provision setting forth the details of in-person educational services as described in the Spring Semester 2020 Course Catalog.  The Spring Semester 2020 Course Catalog indicated classes would be administered in an in-person, on-campus setting.   The Course Catalog did not make any reference to the administration of these courses in an online format.

70.     Defendant also materially breached the parties' contractual agreement by retaining various Mandatory Fees which are paid for on-campus services and facilities.

71.     Defendant also materially breached the parties' contractual agreement because its instructors failed to hold regular office hours after March 13, 2020, when the Spring 2020 semester went remote.

72.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above by failing to provide in-person educational services from March 13, 2020 through the end of the Spring 2020 semester.  Defendant has retained monies paid by Plaintiffs and the Class for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain.

73.     Plaintiffs and members of the Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, programs, access to facilities and services to which they were promised and for which they have already paid.

74.     As a direct and proximate result of Defendant's breach, Plaintiffs and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be

limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver. Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees (or at minimum a portion thereof) for education services not provided since Syracuse shut down on March 13, 2020.

75. Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not provided. Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

76. Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiffs and Class Members that relate to those in-person educational services that were not provided after Syracuse University shut down on or around March 13, 2020, which represents approximately 50% of the Spring Semester 2020.

## SECOND CLAIM FOR RELIEF

### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class)

77. Plaintiffs repeat and re-allege the factual allegations above, as if fully alleged herein.

78. Plaintiffs brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief, to the extent it is determined that Plaintiffs and the Class do not have an enforceable contract with the University regarding the relief requested herein.

79. Plaintiffs and members of the Class conferred a benefit on the University in the form of tuition and Mandatory Fees paid for the Spring Semester. The payment of this tuition and Mandatory Fees was to be in exchange for an in-person, on-campus educational experience,

programs, access to facilities, and services to be provided to the students throughout the entire semester.

80.     The University has retained the full benefit of the tuition and a majority of the Mandatory Fee payments by Plaintiffs and the members of the Class for the semester, yet has failed to provide the quality of education and services and facilities for which tuition and the Mandatory Fees were paid, including those for an in-person and on-campus live education, and access to the University's services and facilities.

81.     Defendant stopped providing in-person services, stopped providing access to campus and facilities, and some professors stopped providing any lectures or otherwise provided lectures with significantly lower interaction.

82.     The costs incurred for having an online only program is significantly less than the overhead needed to provide in-person classes and services on campus.

83.     Allowing the University to retain the tuition and Mandatory Fees paid for in-person, on-campus educational experience, programs, access to facilities, and services, after reducing the benefit provided and the costs incurred by the University, unjustly enriches the Defendant.

84.     Accordingly, the University has been unjustly enriched in the amount of the pro-rated tuition and Mandatory Fees it retained during the portion of time in each semester in which in-person classes were discontinued and facilities were closed by the University.

**THIRD CLAIM FOR RELIEF**

**CONVERSION**
**(On Behalf of Plaintiffs and the Class)**

85.     Plaintiffs repeat and re-allege the factual allegations above, as if fully set forth herein.

86.    In the alternative, should there be a finding that no contract exists, Plaintiffs bring this claim individually and on behalf of the members of the Class.

87.    Plaintiffs and the members of the Class exchanged their property (funds) in the form tuition and Mandatory Fees for a full semester of in-person education, in-person services, access to facilities, and face to face instruction. Should the full semester of in-person education, in-person services, access to facilities, and face to face instruction not be provided, Plaintiffs and members of the Class have a right to be reimbursed pro-rated tuition and Mandatory Fees.

88.    The University exercises control over Plaintiffs' and Class members' property.

89.    The University intentionally interfered with the rights of the Plaintiffs and the Class when it cancelled a portion of the semester, moved all in-person classes to a remote online format, cancelled all on-campus events, and discontinued services for which the Mandatory Fees were intended to pay, all while retaining the property (tuition and Mandatory Fees) of the Plaintiffs and the Class.

90.    The University's retention of the tuition and Mandatory Fees paid by Plaintiffs and the Class without providing the services for which they paid, deprived Plaintiffs and the Class of the benefit for which the tuition and Mandatory Fees were paid.

91.    The University's interference with the services for which Plaintiffs and the Class paid harmed Plaintiffs and the Class in that the University has retained property (funds) that rightfully belong to the Plaintiffs and Class.

92.    The University intends to permanently deprive Plaintiffs and the Class of these funds.

93.    The University has wrongfully converted these specific and readily identifiable funds.

94.     Plaintiffs and the Class are entitled to the return of their remaining pro-rated amounts of tuition and Mandatory Fees for the time when the University switched to remote online learning and stopped providing in person services and access to facilities.

## FOURTH CLAIM FOR RELIEF

### Money Had And Received
### (On Behalf Of The Class)

95.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

96.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

97.     Plaintiffs and members of the Class paid monetary funds to Defendant for tuition and fees for the Spring Semester 2020.

98.     Defendant has retained the monies paid by Plaintiffs and members of the Class for the Spring Semester 2020 while not providing in-person educational services, activities, opportunities, resources, and facilities for which those monies were paid.

99.     Defendant is in possession of and holds money that belongs to Plaintiffs and the members of the Class in equity and good conscience.

100.    Defendant has been unjustly enriched by its retention of the funds Plaintiffs and the members of the Class paid Defendant for tuition and fees, and it is unconscionable for Defendant to retain funds to which it is not entitled.

101.    Defendant's unlawful retention of Plaintiffs' and Class Members' funds has damaged Plaintiffs and the members of the Class.

102.    Defendant owes Plaintiffs and members of the Class for money had and received, including, but not limited to, the amount of Plaintiffs' and Class Members' pro-rated tuition and

fees for each semester where in-person classes were cancelled and transitioned to virtual online learning only.

**FIFTH CLAIM FOR RELIEF**

**Violations of NY General Business Law  § 349, § 350, *ET SEQ.***
**(On behalf of the Class)**

103.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

104.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

105.    New York General Business Law § 349: Deceptive Acts and Practices Unlawful provides for consumer protection by declaring as unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."[27]

106.    New York General business Law § 350: False Advertising Unlawful provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."[28]

107.    Defendant, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive, and fraudulent acts and practices in violation of New York General Business Law § 349, § 350, *et. seq.* by engaging in the activities described herein.

108.    Defendant is a private university which, among other things, offered in-person, hands-on curriculum to Plaintiff and other members of the Class.

109.    Plaintiff and other members of the Classes are consumers who have paid substantial tuition and fees to attend in-person, hands-on curriculum at Defendant's University for the Spring

---

[27] *See* New York General Business Law § 349.
[28] *See* New York General Business Law § 350.

2020 semester, and to receive access and services (including housing and meals) in exchange for additional optional or mandatory fees.

110.    Defendant's efforts to sell its services to prospective students, which included Plaintiff and other members of the Tuition Class, were "consumer-oriented."

111.    As part of its marketing practices and recruitment efforts, as described above, Defendant made numerous statements, representations and omissions to the public (including Plaintiff and members of the Classes) with respect to the in-person educational opportunity and on-campus access and experiences that students who enrolled at the Defendant would receive. Such statements, representations, and omissions, which were uniform and identical in nature, were intended to induce potential students to enroll at the University for the Spring 2020 semester.

112.    With the reasonable expectation that students who enrolled at the University would receive in-person academic instruction with an on-campus experience (including housing and/or dining) for the entire 2020 Spring semester, Plaintiff and other members of the Classes paid tuition to Defendant.

113.    However, students did not receive an in-person academic instruction with on-campus experience, access, and services for the entire 2020 Spring semester, were evicted from on-campus housing, and were not provided on-campus meals.  As a result, Plaintiff and other members of the Classes were proximately caused to pay inflated tuition and fees because they were deprived of in-person academic instruction and an on-campus experience, access, and services for the Spring 2020 semester.

114.    Therefore, the aforementioned statements, representations and omissions made by the University were objectively false, misleading, and deceptive to Plaintiff and the other Class Members, as well as the public at large.

115.    Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Classes because students enrolled for the Spring 2020 term did not benefit from on-campus academic instruction and a unique on-campus experience during the entire spring term.

116.    In fact, Plaintiff and other students were not permitted to receive and benefit from on-campus academic instruction and a unique on-campus experience during the entire Spring 2020 semester.

117.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the University then they would be entitled to receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

118.    Plaintiff and other members of the other Class Members were deceived and injured because students did not receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

119.    As a result of Defendant's foregoing violations of New York General Business Law § 349, § 350, *et seq.*, Defendants have directly and proximately caused damage to Plaintiff and other members of the Classes and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that judgment be entered in favor of Plaintiffs and the Class against Defendant as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order of restitution and all other forms of equitable monetary relief;

(e)     Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

(f)     Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)     Awarding such other and further relief as may be just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to the Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: August 26, 2020                    Respectfully submitted,

*s/ John C. Cherundolo*
John C. Cherundolo
Bar Roll No.: 101339
**CHERUNDOLO LAW FIRM, PLLC**
AXA Tower I, 15th Floor
100 Madison Street
Syracuse, NY 13202
P: (315) 449-9500
F: (315) 449-9804
E: jcherundolo@cherundololawfirm.com

Edward W. Ciolko (To be admitted *pro hac vice*)
James P. McGraw (To be admitted *pro hac vice*)
**CARLSON LYNCH LLP**
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
P (412) 322-9243
F. (412) 231-0246
E. eciolko@carlsonlynch.com
   jmcgraw@carlsonlynch.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot *(pro hac vice* app. forthcoming*)*
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**ANASTOPOULO LAW FIRM, LLC**
Roy T. Willey IV
Eric M. Poulin
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: roy@akimlawfirm.com
        eric@akimlawfirm.com

*Counsel for Plaintiffs and Proposed Class*